SHIRLEY F. SANTILLANA,

     **Plaintiff,**

-vs-            Case No.  6:09-cv-2095-Orl-19KRS

FLORIDA STATE COURT SYSTEM,
EIGHTEENTH JUDICIAL CIRCUIT,
SEMINOLE COUNTY COURTS,
CLAYTON SIMMONS, SUE BLOCK, and
WAYNE FOUNTAIN,

     **Defendants.**

_____

# ORDER

This case comes before the Court on the following:

1.  Motion to Dismiss Plaintiff's Complaint by All Defendants (Doc. No. 4, filed Dec. 17, 2009); and

2.  Amended Motion to Dismiss Plaintiff's Complaint by All Defendants (Doc. No. 7, filed Dec. 18, 2009).

## Background

### I. Plaintiff's Allegations[1]

This case arises out of the allegedly unlawful termination of Plaintiff Shirley F. Santillana, a 59-year old Caucasian female, from her position as a Senior Court Specialist / Senior Mediation Coordinator ("Senior Mediation Coordinator") for Defendant Florida State Court System, Eighteenth Judicial Circuit Court, in and for Seminole County, Florida ("Seminole County Circuit Court").

_____

[1] The facts presented in this Order are derived from the allegations of the Complaint. These facts are included only to provide context and should not be construed as findings of fact.

(Doc. No. 2 ¶ 23.)  Plaintiff asserts that her immediate supervisor was Defendant Wayne Fountain, a Trial Court Technology Officer and Deputy Court Administrator.  (*Id.* ¶ 20.)  Plaintiff also maintains that at all times material to her claims, Defendant Sue Block was responsible for human resources as the County Operations Manager for the Seminole County Circuit Court and that Defendant Clayton D. Simmons was the Chief Administrative Judge for the Seminole County Circuit Court.  (*Id.* ¶¶ 19, 21.)

Santillana alleges that her job responsibilities as Senior Mediation Coordinator included direct supervision over Karen Colbert, an African-American female who had been managing the Mediation Department on an interim basis for several months prior to Santillana's hiring.  (*Id.* ¶¶ 17, 23, 26.)  Plaintiff asserts that Defendants Fountain, Simmons, Block, and other personnel of the Seminole County Circuit Court believed that it was difficult to work with Colbert due to her bad attitude.  (*Id.*)

On November 7, 2007, Plaintiff's first day of employment, Defendant Block allegedly instructed Santillana to "get Colbert's 'comp time' under control," to ensure that the mediation statistics were being reported correctly, and to increase the number of cases being mediated.  (*Id.* ¶ 25.)  Santillana asserts that as part of getting Colbert's 'comp time' under control, she informed Defendants Fountain and Block that Colbert did not work full days and submitted false time sheets in November and December 2007.  (*Id.* ¶¶ 28, 29-30, 42.)  Plaintiff maintains that Defendant Block approved Colbert's false time sheets and required Santillana to sign them over her protests.  (*Id.* ¶¶ 29-30, 39-40.)  In addition, Defendant Fountain allegedly told Santillana, "Seminole Administration has been recently investigated twice by the State and I was not going to have this office investigated again."  (*Id.* ¶ 35.)

Plaintiff further asserts that Colbert refused to oversee mediations although it was part of her job duties. (*Id.* ¶ 31.) When Santillana reported Colbert's alleged insubordination to Defendants Block and Fountain, Santillana was advised that Colbert would not be asked to mediate again. (*Id.*) Santillana also alleges that no action was taken against Colbert when Colbert threatened to quit if Santillana adopted some of Brevard County's operating procedures. (*Id.* ¶ 32.)

Santillana maintains that Colbert improperly reported the mediation statistics, which caused more cases to be assigned to mediators who had favorable relationships with Defendants Fountain and Simmons. (*Id.* ¶ 33.) Santillana asserts that some mediators complained to the Seminole County Circuit Court and that she was instructed to investigate the situation and report to Defendant Fountain. (*Id.* ¶ 34.) Fountain allegedly told Santillana that he had no concern with Colbert's assignments even though the records showed large discrepancies. (*Id.*) Plaintiff further asserts that these discrepancies continued even after she was terminated. (*Id.*)

Colbert was allegedly instructed to train Santillana on the "Fox Pro" computer system but never did so. (*Id.* ¶ 36.) Plaintiff maintains that Defendant Fountain reviewed this situation with his supervisor, Mark Van Bever, and April Copp of Human Resources in Brevard County. (*Id.* ¶ 37.) Copp allegedly stated, "I think [Colbert's] issues run deeper than just having you for a supervisor," and that when "Santillana asks Colbert to do something, she should do it." (*Id.*) Plaintiff asserts that Defendant Fountain "continued to kowtow to the demands of Colbert" after the meeting with Van Bever and Copp. (*Id.* ¶ 38.)

On January 22, 2008, Santillana was allegedly terminated instead of Colbert because Colbert had threatened to sue Defendants for discrimination if she was terminated and because Defendants felt it would be easier to terminate Santillana than face Colbert's threat of litigation. (*Id.* ¶¶ 44, 45.)

Plaintiff also maintains that she was terminated in retaliation for her efforts to report Colbert's improper conduct. (*Id.* ¶¶ 43, 45, 48-58.) Plaintiff asserts that in order to avoid confrontation with Colbert, Defendants Block and Fountain intentionally and maliciously fabricated reasons for Santillana's termination and announced that she was terminated due to her inability to perform job duties, her inability to manage the mediation staff, her combative and abusive manner, and her lack of computer skills. (*Id.* ¶¶ 43, 45-46.)

Plaintiff filed a Whistleblower Discrimination and Retaliatory Complaint ("Whistleblower Complaint") with the Florida Commission on Human Relations ("FCHR") on February 22, 2008, alleging a violation of the Whistleblower's Act, Section 112.3187, Florida Statutes, (2009),[2] and employment discrimination by the Seminole County Circuit Court. (Doc. No. 2 ¶ 3; Doc. No. 2-2 at 3.) Plaintiff alleges that due to an inadvertent mistake by the FCHR, the portion of her Whistleblower Complaint alleging employment discrimination was not properly filed as an Employment Discrimination Complaint with the FCHR until July 14, 2008.[3] (Doc. No. 2 ¶ 3.) On December 11, 2008, the FCHR filed a Notice of Determination stating that it found "no reasonable cause to believe that an unlawful employment practice occurred" on Plaintiff's discrimination charge. (Doc. No. 2 ¶ 8; Doc. No. 2-2 at 9.)

Santillana states that she filed a Petition with the Division of Administrative Hearings ("DOAH") on January 12, 2009. (Doc. No. 2 ¶ 8.) She asserts that a final hearing was scheduled

---

[2] On February 26, 2008, the FCHR determined that the Seminole County Circuit Court was not a "state agency" covered under the Whistleblower Act, Sections 112.3187-112.31895, Fla. Stat. (2008). (Doc. No. 2 ¶ 4; Doc. No. 2-2 at 3.) This ruling by the FCHR was affirmed by the Fifth District Court of Appeal on January 13, 2009. (Doc. No. 2 ¶ 7; Doc. No. 2-2 at 7-8.)

[3] The FCHR Notice of Receipt of Complaint sent to Plaintiff is dated July 16, 2008. (Doc. No. 2-2 at 1.)

for April 16, 2009, and was rescheduled at the request of the FCHR for May 13, 2009. (*Id.* ¶ 9.) On February 2, 2009, Plaintiff allegedly filed her First Request for Production of Documents to which the FCHR responded and filed objections on March 3, 2009. (*Id.* ¶ 10.) On March 16, 2009, Plaintiff allegedly filed her Second Request for Production of Documents, to which the "Respondents"[4] objected on April 10, 2009. (*Id.*) The disputed documents were produced on April 20, 2009, and Santillana scheduled three depositions for April 28 and 29, 2009. (*Id.*) Plaintiff maintains that as a result of the depositions, she identified several additional witnesses and unproduced public records that were essential to her case. (*Id.*) On May 4, 2009,[5] she allegedly filed a Motion to Compel Discovery and a Motion for Continuance. (*Id.*) Santillana maintains that the DOAH denied the Motion to Continue on May 7, 2009, and that she filed a Motion for Rehearing on Petitioner's Motion to Continue on May 11, 2009. (*Id.*; Doc. No. 2-2 at 10.) Plaintiff asserts that the DOAH denied the renewed Motion for Rehearing on Petitioner's Motion to Continue without argument[6] at the Final Hearing on May 13, 2009, and instructed her to proceed with her case. (Doc. No. 2 ¶ 11.) Santillana then dismissed her case without prejudice. (*Id.*) Plaintiff maintains that arguing the merits of her case at that time would have been futile and meaningless. (*Id.*) Plaintiff also maintains that the DOAH procedure was unfair and unduly burdensome because

---

[4] It is unclear what entities Plaintiff refers to as "Respondents." Defendant Seminole County Circuit Court was the lone respondent in the DOAH proceedings. (Doc. No. 2-2 at 10.)

[5] Pursuant to the DOAH Order Closing File, Plaintiff filed a Motion to Continue Final Hearing and a Motion to Compel Responses to Requests for Production on May 6, 2009, not May 4, 2009. (Doc. No. 2-2 at 10.)

[6] Pursuant to the DOAH Order Closing File, Plaintiff's Motion for Rehearing was argued at the commencement of the Final Hearing on May 13, 2009, and was denied. (Doc. No. 2-2 at 10.) In addition, the Order states that Plaintiff's Motion to Compel Discovery was denied because Santillana did not state with particularity which discovery requests she believed to be insufficient or invalid. (*Id.*)

it required her to proceed with her appeal without an adequate record. (*Id.* ¶ 12.) The DOAH entered an Order closing Plaintiff's file on May 18, 2009. (*Id.*; Doc. No. 2-2 at 10.)

On May 14, 2009, Plaintiff Santillana faxed a letter to the EEOC requesting that her discrimination claim remain open. (Doc. No. 2 ¶ 13; Doc. No. 2-2 at 12-14.) On August 12, 2009, the EEOC issued Santillana a Dismissal and Notice of Rights Letter informing her that the EEOC had adopted the findings of the DOAH and advising her that she had 90 days in which to file suit. (Doc. No. 2 ¶ 13; Doc. No. 2-2 at 15.)

## II. Procedural History

Santillana filed suit in the Circuit Court of the Eighteenth Judicial District, in and for Seminole County, Florida, on November 9, 2009, and the case was removed to this Court on December 10, 2009. (Doc. No. 1, filed Dec. 10, 2009.) Her six-count Complaint alleges: (1) discrimination in violation of the Florida Civil Rights Act, Section 760, Fla. Stat. (2009) ("FCRA"), by Defendant Seminole County Circuit Court; (2) retaliation in violation of the FCRA by Defendant Seminole County Circuit Court; (3) violation of Plaintiff's right to Due Process under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983 (2009), by Defendants Fountain, Block, and Simmons, in their individual capacities; (4) negligent supervision by Defendants Seminole County Circuit Court, Fountain, Block, and Simmons; (5) violation of Plaintiff's right to Equal Protection under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983, by Defendants Fountain, Block, and Simmons, in their individual capacities; and (6) civil conspiracy by Defendants Fountain, Block, and Simmons. (Doc. No. 2 at 11-18.)

Defendants move to dismiss the Complaint arguing that: (1) Santillana failed to exhaust her administrative remedies; (2) Defendant Simmons is entitled to judicial immunity; (3) Defendants

Fountain, Block, and Simmons are entitled to qualified immunity; and (4) each of Plaintiff's six claims fails to state a claim upon which relief can be granted. (Doc. No. 7.) Plaintiff has filed no response in opposition.

## Standard of Review

### I. Motion to Dismiss

When ruling on a motion to dismiss for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6), a court must limit its consideration to the complaint, the written instruments attached to it as exhibits, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007); *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). In determining the merits of the motion, a court must "accept all factual allegations in the complaint as true." *Tellabs, Inc.*, 551 U.S. at 323. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Once a court "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," the court must next determine whether the well-pled facts "'state a claim to relief that is plausible on its face.'" *Id.* at 1949-50 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief

will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950 (citation omitted). As the United States Supreme Court explained:

> The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Id.* at 1949 (quotation marks and internal citations omitted) (quoting *Twombly*, 550 U.S. at 557). On a Rule 12(b)(6) motion to dismiss, when a court considers the range of possible interpretations of the defendant's alleged conduct, if the "more likely explanations" involve lawful, non-actionable behavior, the court should find that the plaintiff's claim is not plausible. *Id.* at 1950-51.

## Analysis

### I. Failure to Exhaust Administrative Remedies

Defendants argue that Plaintiff's FCRA claims in Counts I and II should be dismissed for failure to exhaust administrative remedies. (Doc. No. 7 at 4.) Plaintiff asserts in the Complaint that was not required to exhaust administrative remedies because the DOAH's rulings on particular motions rendered exhaustion futile. (Doc. No. 2 ¶¶ 11-12.)

Plaintiff's FCRA claims are subject to the requirement of exhaustion of administrative remedies. *See* § 760.07, Fla. Stat. (2009) ("If the statute prohibiting unlawful discrimination provides an administrative remedy, the action for equitable relief and damages provided for in this section may be initiated only after the plaintiff has exhausted his or her administrative remedy."); § 760.10(a), Fla. Stat. (2009) ("Any person aggrieved by a violation of [the FCRA] may file a complaint with the commission within 365 days of the alleged violation, naming the [responsible party] and describing the violation."). Plaintiff filed a complaint with the FCRA and received a "no reasonable cause" finding. (Doc. No. 2 ¶ 8; Doc. No. 2-2 at 9.) She then requested an

administrative hearing before the DOAH, (Doc. No. 2 ¶ 8), which was another requirement for exhausting her administrative remedies. § 760.11(7), Fla. Stat. (2009) (stipulating that once the commission has made a "no reasonable cause" finding, the petitioner must request an administrative hearing within 35 days, otherwise the claim will be barred); *Ayers v. Wal-Mart Stores, Inc.*, 941 F. Supp. 1163, 1167 (M.D. Fla. 1996) ("[F]ailure to pursue administrative remedies after a 'no reasonable cause' dismissal by the FCHR bars any court action for relief."). Once a complainant pursues an administrative hearing, he or she may only file suit if (1) the hearing officer finds a violation of the FCRA; and (2) the commission adopts the hearing officer's recommendation. § 760.11(7), Fla. Stat.; *Ayers*, 941 F. Supp. at 1167 n.6. Plaintiff satisfied neither of these avenues by voluntarily dismissing her case before the DOAH. Therefore, Plaintiff failed to exhaust her administrative remedies.

Santillana argues that she was not required to exhaust administrative remedies because the DOAH's denial of her Motions to Compel Responses and to Continue the Hearing rendered exhaustion futile. (Doc. No. 2 ¶¶ 11-12.) This Court finds no legal authority for the proposition that futility may excuse Plaintiff's failure to exhaust the administrative remedies mandated by the FCRA. However, even if futility is a legally valid excuse for failing to exhaust administrative remedies in this case,[7] the alleged facts do not plausibly establish the excuse of futility.

--------------------------------

[7] In interpreting Section 760.11(7) on a different issue, the Florida Supreme Court recognized the "stated statutory purpose of liberally construing the FCRA in favor of a remedy for those who are victims of discrimination . . . and the companion principle . . . to narrowly construe statutory provisions that restrict access to the courts." *Woodham v. Blue Cross and Blue Shield of Fla., Inc.*, 829 So. 2d 891, 897 (Fla. 2002). Moreover, futility is a legally valid excuse for failing to exhaust administrative remedies under the Florida Administrative Procedures Act ("Florida APA"), *Agency for Health Care Admin. v. MIED, Inc.*, 869 So. 2d 13, 18 (Fla. 1st DCA 2004), and the Florida APA sets forth the procedures that the DOAH must follow pursuant to Section 760.11(7) of the FCRA.

(continued...)

Plaintiff alleges that proceeding with the DOAH hearing was futile because the DOAH denied her Motions to Compel Discovery and to Continue the Hearing without argument[8] and thus prevented her from acquiring sufficient evidence to argue her claim before the DOAH or on further appeal.[9] (Doc. No. 2 ¶¶ 11, 12, 61-62.) However, this allegation of futility must be rejected in light of the avenues for appeal available to Plaintiff under the Florida Administrative Procedures Act, Section 120.50, et seq., Florida Statutes (2009) ("Florida APA"). *See* § 760.11(7) (stipulating that the DOAH administrative hearing is governed by §§ 120.569, 120.57, Fla. Stat. (2009)). Accepting as true Plaintiff's argument that she lacked sufficient evidence to prosecute her claim on the merits because the DOAH denied her Motions to Compel Responses and to Continue the Hearing, Plaintiff still could have appealed the DOAH's denial of her Motions to the appropriate Florida District Court of Appeal:

---

[7](...continued)
In any case, no Florida court has recognized futility as an excuse for failing to exhaust the administrative remedies mandated by the FCRA.

[8] Plaintiff's assertion that her Motions were denied without argument is contradicted by the DOAH Order Closing File attached to the Complaint, which states that (1) Plaintiff addressed her Motions to Compel Discovery and Continue the Case at the commencement of the Final Hearing on May 13, 2009; (2) the Motion to Compel was denied because Plaintiff failed to state with particularity which discovery responses she believed to be insufficient or invalid; and (3) the Motion to Continue was denied. (Doc. No. 2-2 at 10.) Notwithstanding the procedural history recited in the Order Closing File, this Court presumes Plaintiff's allegations are true for purposes of the instant Motion to Dismiss. *See Tellabs, Inc.*, 551 U.S. at 323 (instructing courts to "accept all factual allegations in the complaint as true" for purposes of a motion to dismiss). *But see* Fed. R. Civ. P. 11(b)(3) ("By presenting to the court a pleading . . . an attorney . . . certifies that to the best of the person's knowledge . . . the factual contentions have evidentiary support or, *if specifically so identified*, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.") (emphasis added).

[9] Plaintiff's allegation that "the administrative scheme for both the Whistleblower Complaint and the racial discrimination complaint failed to satisfy minimum conditions" is vague and conclusory and thus cannot be considered by the Court for purposes of this Motion. (Doc. No. 2 ¶ 14); *Iqbal*, 129 S. Ct. at 1949.

> (1) A party who is adversely affected by a final agency action is entitled to judicial review. A preliminary, procedural, or intermediate order of the agency of an administrative law judge of the [DOAH] is immediately reviewable if review of the final agency decision would not provide an adequate remedy.
>
> (2)(a) Judicial review shall be sought in the appellate district where the agency maintains its headquarters or where a party resides or as otherwise provided by law.

§ 120.68, Fla. Stat. (2009). Because Plaintiff did not appeal the denial of her Motions either immediately or after the final order was issued, Plaintiff's claim of futility of exhausting her administrative remedies must be rejected. Accordingly, even if futility is a legally valid excuse for failure to exhaust administrative remedies under the FCRA, it was not futile for Plaintiff to continue with the DOAH hearing under the alleged facts, and Plaintiff's FCRA claims must be dismissed for failure to exhaust administrative remedies.

## II. Judicial Immunity

Defendants argue that Plaintiff's claims against Simmons should be dismissed because he is entitled to judicial immunity. (Doc. No. 7 at 5.) In support of their argument, Defendants state that Simmons possessed administrative powers as a chief judge of a judicial district pursuant to Rule 2.215 of the Florida Rules of Judicial Administration. (*Id.*) Plaintiff asserts that at all times relevant to this case, Simmons was acting in a non-judicial capacity as an administrator and thus was not subject to judicial immunity. (Doc. No. 2 ¶ 19.)

Judges are not liable in civil actions for their "judicial acts," even when such acts are in excess of their jurisdiction or are alleged to have been done maliciously or corruptly. *Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978). "Judicial acts" do not include "the administrative, legislative, or executive functions that judges may on occasion be assigned by law to perform."

*Forrester v. White*, 484 U.S. 219, 227 (1988). Thus, the nature of the function performed determines whether judicial immunity applies. *Id.* at 229.

In *Forrester*, the Supreme Court held that a judge acted in an administrative capacity and thus was not entitled to judicial immunity for demoting and discharging a court employee, even though doing so was part of his assigned duties. *Id.* In that same vein, even if Defendant Simmons possessed administrative powers as a sitting judge in the Seminole County Circuit Court as argued by the Defendants, he cannot receive judicial immunity for the alleged unlawful termination of Plaintiff's employment because such action was administrative, not judicial. (*See* Doc. No. 2 ¶ 41, 46 ("[Defendant Simmons] intentionally and maliciously fabricated reasons to terminate Santillana to avoid a race-based claim by Colbert . . . [and] to cover the real reason for Santillana's termination . . . .").) The unavailability of judicial immunity under the alleged facts, however, does not preclude Defendant Simmons from receiving qualified immunity. *Forrester*, 484 U.S. at 230.

## III. Qualified Immunity

Defendants argue that Simmons, Fountain, and Block are entitled to qualified immunity because their alleged actions did not violate any clearly defined statutory or constitutional right of Santillana. (Doc. No. 7 at 6-7.)

The Court must consider the federal law of qualified immunity to determine whether Defendants are immune to Plaintiff's Section 1983 claims in Counts III and V, and the Court must consider the applicable waivers of sovereign immunity under Florida law to determine whether Defendants can be held personally liable on Plaintiff's state-law tort claims of negligent supervision and civil conspiracy in Counts IV and VI. *See Jordan v. Mosley*, 487 F.3d 1350, 1357 (11th Cir.

2007) (explaining that police officer's immunity on state-law claims derives from state law rather than qualified immunity).

## A. Federal Qualified Immunity

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To receive qualified immunity, the government official must first show that he acted within his or her discretionary authority. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). To act within the scope of discretionary authority means that the actions were (1) undertaken pursuant to the performance of the official's duties; and (2) within the scope of the official's authority. *Collier v. Dickinson*, 477 F.3d 1306, 1308 n.1 (11th Cir. 2007). If this threshold inquiry is satisfied, the Court then determines whether (1) the facts alleged by the plaintiff make out the violation of a constitutional right; and (2) whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. *Pearson v. Callahan*, 129 S. Ct. 808, 816 (2009). The Court may consider these two factors in either order. *Id.* at 818.

Although the issue of qualified immunity should be resolved as early as possible in the proceedings, *Pearson*, 129 S. Ct. at 815-16, the Court cannot do so on Defendants' Motion to Dismiss because it is unclear from the alleged facts which, if any, of the three individual Defendants

possessed the discretionary authority to terminate Plaintiff's employment.[10]   Accordingly, the

Defendants cannot receive qualified immunity at this stage of the proceedings.

### B.  Sovereign Immunity for Defendants on State Tort Claims

The liability of employees of the State of Florida or any of its subdivisions is limited by

Section 768.28(9)(a), Florida Statutes:

> No officer, employee, or agent of the state or of any of its subdivisions shall be held
> personally liable in tort or named as a party defendant in any action for any injury
> or damage suffered as a result of any act, event, or omission of action in the scope
> of her or his employment or function, unless such officer, employee, or agent acted
> in bad faith or with malicious purpose or in a manner exhibiting wanton and willful
> disregard of human rights, safety, or property.

Defendants Simmons, Fountain, and Block are allegedly employees of the Eighteenth

Judicial District (Doc. No. 2 ¶¶ 19-21), which is part of the judicial branch and defined as a "state

agency or subdivision."  § 768.28(2), Fla. Stat. (2009).  Accordingly, if Simmons, Fountain, and

Block acted within the scope of their employment, they would be liable for state-law torts only to

the extent they acted "in bad faith or with malicious purpose or in a manner exhibiting wanton and

willful disregard of human rights, safety, or property."  § 768.28(9)(a), Fla. Stat.  However, the

Court cannot determine from the facts alleged in the Complaint whether Simmons, Fountain, and

---

[10] The Florida State Courts System Policy Statement attached to Plaintiff's Complaint, by
itself, does not define who had the discretionary authority to terminate Plaintiff's employment:

> All employees of the Florida State Courts System are at-will employees and serve
> at the pleasure of the appointing authority.  For the purposes of these regulations, .
> . . the Chief Judges of the judicial circuits of Florida exercise administrative
> supervision over court personnel in their respective jurisdictions.

(Doc. No. 2-2 at 16.)

Block acted within the scope of their employment. Thus, the individual Defendants cannot receive statutory immunity from Plaintiff's state-law claims at this stage of the proceedings.

## IV. Failure to State a Claim Upon Which Relief Can be Granted[11]

### A. Count III: Violation of Due Process

Plaintiff claims that Defendants acted under color of state law to deprive her of the right to due process under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983. (Doc. No. 2 at 13-15.) Defendants argue that Plaintiff fails to state a claim for a violation of Section 1983 because Plaintiff's at-will employment was not "property" protected by the due process clause of the Fourteenth Amendment. (Doc. No. 7 at 9.) Defendants further argue that Plaintiff is foreclosed from making a due process challenge to the state administrative process for handling civil rights claims because Plaintiff herself caused the administrative process to be incomplete. (*Id.* at 10.)

To bring an action under Section 1983, a plaintiff must allege (1) a deprivation of rights, privileges, or immunities secured by the federal Constitution or federal law; and (2) that the deprivation occurred under the color of state law. *Arrington v. Cobb County*, 139 F.3d 865, 872 (11th Cir. 1998) (internal citations omitted). As to the first element, Plaintiff asserts a violation of the Fourteenth Amendment due process clause, which states that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. The Eleventh Circuit has held that "employment rights are state-created rights and are not 'fundamental rights' created by the Constitution" and therefore are only protected under the procedural, rather than

---

[11] Having found that Plaintiff's FCRA claims in Counts I and II should be dismissed for failure to exhaust administrative remedies, the Court need not discuss whether these Counts would otherwise state a claim upon which relief can be granted.

substantive, component of the due process clause. *McKinney v. Pate*, 20 F.3d 1550, 1560 (11th Cir. 1994) (en banc). A Section 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process. *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003).

There is no property interest in "at-will" employment, *Davis v. Mobile Consortium of CETA*, 857 F.2d 737, 741 (11th Cir. 1988), and it is undisputed that Plaintiff's employment with the Seminole County Circuit Court was "at will." (*See* Doc. No. 2 ¶ 47 ("Although Santillana was an at will employee . . ."); Doc. No. 2-2 at 17 ("State Courts System employees are at-will employees. This personnel manual does not, nor is intended to confer upon employees any protectable property interest or contract of employment.")). Therefore, Plaintiff had no property interest in continued employment, and the termination of her employment was not subject to the protections of procedural due process.

Plaintiff next claims that her due process rights were violated because she was denied state-created procedural protections against discrimination and retaliation, including "rights and protections to be free from adverse government actions unless and until the government of the State of Florida first provided [her] with a process that was substantially timely, unbiased, and fair and that enabled her to [e]ffectively defend herself against said government intrusion." (Doc. No. 2 ¶¶ 76-78.)

Plaintiff does not cite, and the court does not find, any authority for the proposition that the procedures of the FCRA and Florida APA are a property or liberty interest protected by the due process clause. In all cases where courts discuss a violation of procedural due process due to the

violation of administrative procedures, the employee at issue has some claim of entitlement to continued employment, as opposed to a mere expectation of continued at-will employment like Plaintiff. *See, e.g.*, *Gilbert v. Homar*, 520 U.S. 924, 928-29 (1997) ("[P]ublic employees who can be discharged only for cause have a constitutionally protected property interest in their tenure and cannot be fired without due process."); *Logan v. Zimmerman Brush, Co.*, 455 U.S. 422, 430 (1982) ("The hallmark of property . . . is an individual entitlement grounded in state law, which cannot be removed except 'for cause'"); *McKinney*, 20 F.3d at 1554 (noting that the plaintiff could only be fired "for cause"). Moreover, "[u]nder Florida law, statutory procedures alone do not create protected property interests." *Key West Harbour Dev. Corp. v. City of Key West, Fla.*, 987 F.2d 723, 728 (11th Cir. 1993) (citing *Kelly v. Gill*, 544 So. 2d 1162, 1164-65 (Fla. 5th DCA 1989)). In addition, the U. S. Supreme Court has made clear that a property right protected by the due process clause cannot be defined by procedural rules:

> [T]he Due Process Clause provides that certain substantive rights - life, liberty, and property - cannot be deprived except pursuant to constitutionally adequate procedures. The categories of substance and procedure are distinct. Were the rule otherwise, the Clause would be reduced to a mere tautology. "Property" cannot be defined by the procedures provided for its deprivation any more than can life or liberty.

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985); *see also Olim v. Wakinekona*, 461 U.S. 238, 250-51 (1983) ("The State may choose to require procedures for reasons other than protection against deprivation of substantive rights, of course, but in making that choice the State does not create an independent substantive right."); *Henderson v. Sotelo*, 761 F.2d 1093, 1097 (5th Cir. 1985) (holding that while a violation of procedures upon which removal of an employee is conditioned might give rise to some non-constitutional cause of action against employer, such procedures would not create a property interest which otherwise did not exist). Therefore, the mere

existence of procedures under the Florida APA and FCRA does not give rise to a property or liberty interest protected by the due process clause.

However, even if Plaintiff was deprived of procedural guarantees protected by the due process clause, Plaintiff fails to state a claim under Section 1983 for a violation of her procedural due process rights. In *McKinney*, the Eleventh Circuit Court of Appeals held that where a plaintiff suffers a procedural deprivation during a hearing in Florida, that employee does not suffer a violation of procedural due process rights unless the state refuses to "make available a means to remedy the deprivation." *McKinney*, 20 F.3d at 1563. The panel in *McKinney* examined the remedies available to the plaintiff under Florida law, determined that those remedies adequately protected plaintiff's procedural due process rights, and thus concluded that no procedural due process violation occurred. *Id.* at 1563-64, 1567.

Guided by the Eleventh Circuit's methodology in *McKinney*, this Court looks to Florida law to determine if an adequate remedy was available to Plaintiff under the alleged facts. Pursuant to the Florida APA, Plaintiff had the right to appeal the allegedly unlawful DOAH rulings to the appropriate Florida District Court of Appeals:

> A party who is adversely affected by final agency action is entitled to judicial review. A preliminary, procedural, or intermediate order of the [DOAH] is immediately reviewable if review of the final agency decision would not provide an adequate remedy.

§ 120.68(1), Fla. Stat. (2009). Florida District Courts of Appeal are empowered to "provide whatever relief is appropriate," including setting aside agency action, remanding the case for further agency proceedings, or deciding the rights, privileges, obligations, requirements, or procedures at issue between the parties. § 120.68(6)(a), Fla. Stat. (2009). It is not clear whether the District Court of Appeal could have awarded Plaintiff the monetary damages she seeks in this case pursuant to

Section 1983. However, to satisfy procedural due process, the state remedial procedures need not provide all relief available under Section 1983. *McKinney*, 15 F.3d at 1564. Rather, state remedies satisfy procedural due process if they "could have fully compensated" the plaintiff for the loss suffered. *Id.* Plaintiff's factual allegations reveal that Santillana would have been fully compensated if the Florida District Court of Appeal reversed the DOAH's denial of her Motions to Continue and to Compel Discovery and remanded the action to the DOAH for further agency proceedings. § 120.68(6)(a), Fla. Stat. Because the Florida APA provided a remedy for the procedural deprivations that the DOAH allegedly caused Plaintiff to suffer, Santillana's due process rights were not violated under the alleged facts, and her Section 1983 due process claim must be dismissed.[12]

### B. Count IV: Negligent Supervision

Plaintiff asserts that Defendants Seminole County Circuit Court, Simmons, Fountain, and Block owed Santillana a duty to supervise Karen Colbert in order to ensure that she followed the applicable rules, guidelines, and statutes. (Doc. No. 2 ¶ 85.) The Defendants allegedly breached that duty by failing to properly supervise Colbert and thereby allowing her to falsify her time records and favor particular mediators over others. (*Id.* ¶ 86.) In addition, Plaintiff maintains that Defendant Simmons breached his duty to Santillana to properly supervise Block and Fountain by failing to train them to render fair and impartial personnel decisions regarding Santillana and Colbert. (*Id.* ¶ 87.) Finally, Plaintiff alleges that she was terminated as a direct and proximate result of the

---

[12] Like the plaintiff in *McKinney*, Santillana did not avail herself of the state remedies available to her before filing a Section 1983 claim in federal court. *McKinney*, 20 F.3d at 1567; (Doc. No. 2 ¶ 11.) This fact does not affect the analysis of Plaintiff's procedural due process claim and does not impose a requirement that Plaintiff exhaust state administrative remedies before bringing a Section 1983 claim. *McKinney*, 20 F.3d at 1564 n.20, 1567.

aforementioned instances of negligent supervision. (*Id.* ¶ 88.) Defendants argue that Plaintiff's claims for negligent supervision must be dismissed because they owe Plaintiff no duty of care under the alleged facts. (Doc. No. 7 at 13.)

As a preliminary matter, a claim for negligent supervision may only be maintained against an employer, even though the underlying improper conduct is committed by an employee. *See Dep't of Envtl. Prot. v. Hardy*, 907 So. 2d 655, 660 (Fla. 5th DCA 2005) ("Negligent supervision occurs when during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further actions such as investigation, discharge, or reassignment."); *Garcia v. Duffy*, 492 So. 2d 435, 438 (Fla. 2d DCA 1986) ("[N]egligent . . . retention, allows for recovery against an employer for acts of an employee . . . ."). Finding no legal authority to the contrary, Plaintiff's claim of negligent supervision against Defendants Fountain, Simmons, and Block has no legal basis because they are not alleged to be employers, and therefore such claims against these Defendants must be dismissed.

Turning to the claim of negligent supervision against Defendant Seminole County Circuit Court, it is clear that the alleged acts by employees giving rise to liability for negligent supervision must occur outside the employees' scope of employment. *See Watson v. City of Hialeah*, 552 So. 2d 1146, 1148 (Fla. 3d DCA 1989) ("By its very nature, an action for negligent retention involves acts which are *not* within the course and scope of employment and allows recovery even when an employer is not vicariously liable under the doctrine of respondeat superior.") (emphasis in original); *Garcia v. Duffy*, 492 So. 2d 435, 438 (Fla. 2d DCA 1986) ("[N]egligent . . . retention, allows for recovery against an employer for acts of an employee committed outside the scope and course of employment."). The history of the tort of negligent supervision in Florida is also instructive. In

*Mallory v. O'Neil*, 69 So. 2d 313 (Fla. 1954), the Florida Supreme Court first recognized the tort of negligent supervision, also known as negligent hiring or retention, and cited with approval Section 317 of the Restatement (Second) of Torts, which imposed a duty on a master "to exercise reasonable care to control the conduct of his servant while acting outside the course of his employment." *Mallory*, 69 So. 2d at 315; *Garcia*, 492 So. 2d at 438.  Plaintiff does not allege facts from which the Court may conclude that Simmons, Fountain, or Block acted outside of the scope of their employment.  Therefore, Plaintiff fails to state a claim for negligent supervision against Defendant Seminole County Circuit Court.

Alternatively, Plaintiff's claim of negligent supervision against Defendant Seminole County Circuit Court must be dismissed because the Seminole County Circuit Court owed Plaintiff no duty under the alleged facts.  The existence of a duty is a question of law for the Court.  *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 502 (Fla. 1992).  In the context of a claim of negligent supervision, "an employer has a legal duty arising out of the relationship between the employment in question and the plaintiff . . . if he or she is in the zone of foreseeable risks created by the employment." *Storm v. Town of Ponce Inlet*, 866 So. 2d 713, 717 (Fla. 5th DCA 2004).  Thus, the issue is whether Santillana was in the zone of foreseeable risks created by Colbert's employment with the Seminole County Circuit Court.  Plaintiff alleges no facts from which this Court can conclude that there was a foreseeable risk of harm to Santillana as a result of Karen Colbert's alleged time-keeping, record-keeping, and attendance problems.  In addition, there is no common-law duty to enforce a law for the benefit of an individual or to prevent the misconduct of third parties.  *Trianon Park Condo. Ass'n, Inc. v. City of Hialeah*, 468 So. 2d 912, 918 (Fla. 1985).  Thus, the allegation that Colbert's conduct violated court rules, procedures, or state statutes, even if true, does not impose a duty on

the Seminole County Circuit Court to protect Santillana from harm caused by Colbert's unlawful acts. Finally, the Seminole County Circuit Court owed Plaintiff no duty to prevent the alleged discriminatory termination of Plaintiff's employment because "Florida does not recognize a common law claim for negligent failure to maintain a workplace free of discrimination." *Ayubo v. City of Edgewater*, No. 6:08-cv-1197-Orl-31GJK, 2009 WL 113381, at *4 (M.D. Fla. Jan. 16, 2009) (citing *Castleberry v. Edward M. Chadbourne, Inc.*, 810 So. 2d 1028 (Fla. 1st DCA 2002); *Merrick v. Radisson Hotels Int'l, Inc.*, No. 06-CV-1591, 2007 WL 1576361 (M.D. Fla. May 30, 2007); *Scelta v. Delicatessen Support Serv. Inc.*, 57 F. Supp. 2d 1327 (M.D. Fla. 1999)). Thus, Plaintiff's claim of negligent supervision against Defendant Seminole County Circuit Court must be rejected because it owed Plaintiff no duty under the alleged facts.

### C. Count V: Violation of Equal Protection

Plaintiff claims that Defendants Fountain, Block, and Simmons denied her equal protection in violation of the Fourteenth Amendment and 42 U.S.C. § 1983 by intentionally discriminating against her in order to avoid a race-based discrimination claim by Karen Colbert. (Doc. No. 2 ¶¶ 89-94.) Defendants argue that Plaintiff's equal protection claim should be dismissed because she makes only conclusory allegations in support of her claim. (Doc. No. 7 at 15-16.)

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection under the laws, "which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). In order to assert a claim under the Equal Protection Clause of the Fourteenth Amendment, Plaintiff must allege that: (1) she was treated differently from similarly situated persons; and (2) the defendant unequally applied the laws for the purpose of

discriminating against Plaintiff. *GJR Invs. v. County of Escambia*, 132 F.3d 1359, 1367 (11th Cir. 1998). The similarly situated persons, or comparators, must be "prima facie identical [to plaintiffs] in all relevant respects." *Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1314 (11th Cir. 2006) ("[D]ifferent treatment of dissimilarly situated persons does not violate the equal protection clause.").

Plaintiff's complaint fails to allege that she was treated differently than similarly situated individuals. *See Griffin Indus. v. Irvin*, 496 F.3d F.3d 1189, 1204 (11th Cir. 2007) (holding that plaintiffs may not rely on broad generalities in identifying a similarly situated comparator, but rather, the "similarly situated" requirement must be applied "with vigor"); *see also Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992) (suggesting that to state a viable equal protection claim, a plaintiff must show that it sustained disparate treatment compared to a person that is alike in "all relevant respects"). Plaintiff alleges that she was terminated instead of Karen Colbert because Colbert threatened a racial discrimination lawsuit and because "Defendants felt it easier to terminate Santillana than face such threatened litigation." (Doc. No. 2 ¶¶ 43-45, 64.) Colbert is not similarly situated to Santillana because Santillana was Colbert's supervisor. (*Id.* ¶¶ 23, 63.) Therefore, Plaintiff fails to state a Section 1983 claim for equal protection.[13]

---

[13] For the same reasons, Plaintiff has not asserted a "class of one" Equal Protection claim, as described in *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000). Plaintiff does not allege facts which plausibly establish that she was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.* at 564; *see also Eggleston v. Bieluch*, 203 F. App'x 257, 264 (11th Cir. 2006) (describing elements for "class of one" Equal Protection claim and reaffirming that the "quantity and quality of the comparator's misconduct [must] be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges.") (citing *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999)).

Alternatively, Plaintiff's equal protection claim must be dismissed because she alleges no facts from which the Court can conclude that she was treated differently because of her race or any other protected characteristic. *See Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 229-30 (1995) ("[W]henever the government treats any person unequally because of his or her race, that person has suffered an injury that falls squarely within the language and spirit of the Constitution's guarantee of equal protection."); *Williams v. City of Jacksonville*, 341 F.3d 1261, 1268 (11th Cir. 2003) ("The Equal Protection Clause ensures a right to be free from intentional discrimination based upon race."); *Brown v. City of Ft. Lauderdale*, 923 F.2d 1474, 1478 n.8 (11th Cir. 1991) ("[A] plaintiff must show a purpose or intent to discriminate in proving an equal protection violation based on racial discrimination."). Plaintiff maintains that she was terminated instead of Karen Colbert in retaliation for reporting Colbert's improper acts to her supervisors and because Fountain, Block, and Simmons wanted to avoid the racial discrimination claim threatened by Colbert. (Doc. No. 2 ¶¶ 43-45, 92.) These alleged reasons for terminating Santillana's employment are independent of her race. Accordingly, the facts pled do not plausibly establish that Santillana was terminated because of her race as opposed to any other race-neutral reason, and her Section 1983 equal protection claim must be dismissed.

### D. Count VI: Civil Conspiracy

Plaintiff alleges that Defendants Fountain, Block, and Simmons are liable for civil conspiracy because they acted in concert to unlawfully discriminate against Plaintiff in order to cover up the wrongful acts of Karen Colbert and to avoid a claim of racial discrimination that was threatened by Colbert. (*Id.* ¶ 97-100.) Defendants argue that this claim should be dismissed

because Plaintiff fails to allege that there was an agreement between Defendants Fountain, Block, and Simmons to commit such a cover-up. (Doc. No. 7 at 16.)

A civil conspiracy requires: (1) an agreement between two or more parties; (2) to do an unlawful act or to do a lawful act by unlawful means; (3) the doing of some overt act in pursuance of the conspiracy; and (4) damage to plaintiff as a result of the acts done under the conspiracy. *Charles v. Fla. Foreclosure Placement Ctr., LLC*, 988 So. 2d 1157, 1159-60 (Fla. 3d DCA 2008). The first element, the existence of an agreement, is plausibly established by Plaintiff's allegations that Simmons, Fountain, and Block "acted in concert" and put forth "a contrived effort to cover up their wrongdoings." (Doc. No. 2 ¶¶ 97, 100.)

As to the second element, "an actionable conspiracy requires an actionable underlying tort or wrong." *Walters v. Blankenship*, 931 So. 2d 137, 140 (Fla. 5th DCA 2006). No actionable tort or wrong cognizable by law is stated under the alleged facts. *See supra* parts IV.A, IV.B, IV.C.[14]

However, an alternative basis for a civil conspiracy claim exists where the alleged wrongful conduct would not be actionable if done by one person, but by reason of force of numbers or other

---

[14] Notwithstanding Plaintiff's failure to exhaust administrative remedies, Plaintiff does not state claims for discrimination or retaliation in violation of the FCRA upon which relief can be granted. Plaintiff does not sufficiently plead a claim of discrimination because she does not allege that action was taken against her because of her race, as opposed to any race-neutral reason. *See* (Doc. No. 2 ¶¶ 43-45, 63-64); § 760.10, Fla. Stat. (2009) ("It is an unlawful employment practice for an employer . . . [t]o discharge or . . . otherwise to discriminate against any individual with respect to . . . terms, conditions, or privileges of employment, *because of* such individual's race. . . .") (emphasis added); *McCray v. Potter*, 263 F. App'x 771, 773 (11th Cir. 2008) (affirming the dismissal of a complaint pursuant to Fed. R. Civ. P. 12(b)(6) because the plaintiff "did not allege that any discriminatory act was taken *because of* her race, color, religion, sex, or national origin") (emphasis added). Plaintiff's allegation that she was terminated for exposing Karen Colbert's bad acts does not state a claim for retaliation because Plaintiff's alleged acts were not in opposition to a practice made unlawful by Title VII or the FCRA. *See* (Doc. No. 2 ¶¶ 43, 69-72); *Guess v. City of Miramar*, 889 So. 2d 840, 847 (Fla. 4th DCA 2004) (citing *EEOC v. Total Sys. Servs., Inc.*, 332 F.3d 1171, 1174 (11th Cir. 2000)).

exceptional circumstances, the defendants possess some "peculiar power of coercion." *Kee v. Nat'l Reserve Life Ins. Co.*, 918 F.2d 1538, 1542 (11th Cir. 1990); *Walters*, 931 So. 2d at 141; *see also Churruca v. Miami Jai-Alai, Inc.*, 353 So. 2d 547 (Fla. 1977) (jai-alai players stated claim for conspiracy against jai-alai fronton owners who allegedly conspired to prevent players from getting jobs in arenas after a players strike); *Snipes v. W. Flagler Kennel Club, Inc.*, 105 So. 2d 164 (Fla. 1958) (claim for conspiracy was stated against five kennel club owners who refused the plaintiff greyhound racer privileges at their tracks and used intimidation to drive the plaintiff out of business); *Margolin v. Morton F. Plant Hosp. Ass'n, Inc.*, 342 So. 2d 1090 (Fla. 2d DCA 1977) (holding that a physician stated a claim for conspiracy against a group of anesthesiologists who refused to provide their services to plaintiff's patients, which deprived him of his hospital privileges and drove him out of his practice at the major local hospital). This exception to the requirement of an actionable tort or wrong is sometimes called the "force of numbers" exception or an "economic boycott" and is narrowly construed. *Kee*, 918 F.2d at 1542.

The case of *Buckner v. Lower Fla. Keys Hosp. Dist.*, 403 So. 2d 1025 (Fla. 3d DCA 1981), is instructive. In *Buckner*, the Third District Court of Appeal affirmed the dismissal of a civil conspiracy claim against a hospital, two separate boards of trustees of the hospital, two hospital administrators, and the hospital's medical staff for not renewing the plaintiff physician's staff privileges. *Id.* at 1026. The court found that the "force of numbers" exception did not apply because the plaintiff's staff privileges could only be terminated by the hospital, a single entity which acted through the defendants, and thus a combination of separate economic groups or forces did not exist. *Id.* at 1029. Accordingly, the "force of numbers" exception does not apply where a single source of economic power causes the alleged harm, even if that harm is brought about by multiple actors.

Plaintiff alleges that she was employed by the Seminole County Circuit Court and that such employment was terminated through the concerted acts of Defendants Fountain, Block, and Simmons, employees of the Seminole County Circuit Court. (Doc. No. 2 ¶¶ 3, 19-21, 23, 99.) Like the plaintiff in *Buckner*, Santillana alleges no facts from which the Court may conclude that Fountain, Block, and Simmons possessed economic power that was not derived from their positions with the Seminole County Circuit Court or that Santillana was harmed by a source of economic power other than the Seminole County Circuit Court. Therefore, the alleged facts do not state a claim of civil conspiracy under the "force of numbers" exception.

Even if Santillana's termination was caused by multiple economic forces, Santillana also fails to state a claim of civil conspiracy under the "force of numbers" exception because the Court cannot conclude from the alleged facts that she could not have been terminated by one of the alleged conspirators acting alone. *See Kee*, 918 F.2d at 1542 (noting that the force of numbers exception applies only where the result the defendants' concerted action is different from anything that could have been accomplished by a single defendant); *supra* part III.A (noting that it is unclear from the alleged facts who possessed the authority to terminate Santillana's employment). Having failed to plead an unlawful act or facts plausibly establishing the "force of numbers" exception, Plaintiff's claim of civil conspiracy in Count VI must be dismissed.[15]

---

[15] Pursuant to the intracorporate conspiracy doctrine, employees cannot form a conspiracy among themselves when acting within the scope of employment. *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000); *Dickerson v. Alachua County Comm'n*, 200 F.3d 761, 768 (11th Cir. 2000); *see also Ayubo*, 2009 WL 113381, at *4. The Court cannot determine from the alleged facts whether Defendants Simmons, Fountain, and Block acted within the scope of their employment. Thus, the Court cannot apply the intracorporate conspiracy doctrine to dismiss Plaintiff's claim of civil conspiracy at this stage of the proceedings.

**Conclusion**

Based on the foregoing, it is **ORDERED** and **ADJUDGED** that the Motion to Dismiss Plaintiff's Complaint (Doc. No. 4) is **DENIED as moot**, and the Amended Motion to Dismiss Plaintiff's Complaint (Doc. No. 7) is **GRANTED**. Counts I and II of the Complaint are **DISMISSED with prejudice** for failure to exhaust administrative remedies. Counts III - VI of the Complaint are **DISMISSED without prejudice**.

Plaintiff has leave to file an Amended Complaint that comports with this Order within fourteen (14) days from the date of this Order. Failure to comply with this Order may result in dismissal of the case with prejudice and without further notice.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on January 14, 2010.

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record